## Case No. 3,764.

DELAWARE & H. CANAL CO. v. CLARK.

[7 Blatchf. 112; Cox, Manual Trade-Mark Cas. 187.][1]

Circuit Court, S. D. New York. Jan. 5, 1870.[2]

TRADE-MARK—ACQUIESCENCE IN USE—ESTOPPEL—INJUNCTION.

1. The plaintiffs, being coal-miners, claimed the exclusive right to use the words "Lackawanna coal" as a name or trade-mark for coal, and brought this suit to enjoin the defendant from using those words to designate coal sold by him which was not mined by the plaintiffs: *Held*, that the plaintiffs, by their acts of acquiescence in the use of those words by the defendant to designate coal sold by him which had not been mined by the plaintiffs, had licensed the defendant to use those words to designate the coal sold by him, and were equitably estopped from enjoining the defendant from using those words for such purpose.

2. The basis of the action of a court of equity to restrain the infringement of the right to a trade-mark, is fraud on the part of the defendant.

[See note at end of case.]

[In equity. Bill by the president, managers, and company of the Delaware & Hudson Canal Company against Henry C. Clark.] This was a final hearing, on pleadings and proofs.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. Cox, Manual Trade-Mark Cas. 187, contains only a partial report.]

[2] [Affirmed in 13 Wall. (80 U. S.) 311.]

Edward H. Owen and Stephen P. Nash, for plaintiffs.

William Fullerton and Erastus B. Rudd, for defendant.

BLATCHFORD, District Judge. The plaintiffs are a corporation created by the state of New York. The defendant is, and has been for twenty-nine years, a dealer in coal, carrying on business at Providence, in the state of Rhode Island, and having yards there where he stores, and from which he sells, coal. The plaintiffs own and operate a canal, from Rondout, on the Hudson river, to Honesdale, in the state of Pennsylvania, and a railroad from Honesdale to lands in that state which they own, and from which they have, for many years past, been mining coal, which they have afterwards sent to market on said railroad and said canal. They assert, in their bill, which was filed January 2d, 1867, that they have a title to the name of "Lackawanna coal," as a special, particular, and distinctive name or trade-mark for their coal, the product of their mines, in distinction from the coal of other parties; that, for a number of years past, they have sold and consigned, and still continue to sell and consign, large quantities of the said "Lackawanna coal" for sale and consumption in Providence aforesaid, and in its vicinity; that certain dealers in Providence keep on hand for sale, and advertise and sell, the plaintiffs' coal under the aforesaid name of "Lackawanna coal;" that the defendant has carried on and still carries on, at Providence, the business of a coal merchant or dealer in coal, and for that purpose owns and occupies a yard in which he keeps anthracite coal for sale; that he does not purchase, keep, or have for sale any of the plaintiffs' "Lackawanna coal," but exclusively buys, sells and deals in other and different kinds of anthracite coal, which have been named by the producers thereof, and are generally called and known by the names of, "Scranton coal" and "Pittston coal," and are produced by other and different companies; that the coal in which the defendant deals is of the same general appearance as the plaintiffs' "Lackawanna coal;" that the defendant has been wrongfully and fraudulently selling and offering for sale his aforesaid Scranton and Pittston coal by the name of, and as, and for, "Lackawanna coal," and, to carry out and effect such fraud and deception, has erected, or caused to be erected, and has, a sign upon or at his coal yard, whereon is painted or inscribed the name "Lackawanna coal," thereby falsely and fraudulently representing, and designing and intending to have the public to understand and believe, that he keeps and has for sale the plaintiffs' "Lackawanna coal;" that, in order further to carry out his aforesaid false and fraudulent designs and intentions, and to injure the plaintiffs in the sale of their aforesaid coal, he has falsely advertised, and continues to advertise, in the public newspapers printed in the city of Providence, that he has for sale "Lackawanna coal," whereas, in truth and in fact, he has not any of such coal; that he has been and is selling and offering to sell his said coal as and for the "Lackawanna coal" of the plaintiffs; that he is, in these ways, pirating, and wrongfully and fraudulently using, the plaintiffs' aforesaid name or trade-mark, and thereby injuring them in the sale of their "Lackawanna coal," and deceiving the public; that, as an excuse for such wrongful and fraudulent acts, he gives out and pretends, that his coal comes from a region of country in the state of Pennsylvania, known as the Lackawanna region or valley, and that, therefore, he is entitled to advertise and sell his coal by the name of "Lackawanna coal;" that his coal is sold and delivered to him by the original producers thereof, under their distinctive trade-marks or names of "Pittston coal" and "Scranton coal," so given to it by the producers thereof, and that the greater portion thereof, if not all, is taken from the valley or region more properly known as the Wyoming Valley; that, when the word "Lackawanna" was adopted by the plaintiffs as their trade-mark as aforesaid, it had never been used or combined with the word "coal," so as to form the compound word or term "Lackawanna coal," and that it has not, at any time since, been so used by any producer of coal except the plaintiffs; that, so far as respects the use of the word, as applied to coal, the plaintiffs have a prior and exclusive right thereto, in which they should be protected; that the use of the plaintiffs' aforesaid trade-mark or name by the defendant is fraudulent, and is used with the design to obtain for his coal the reputation and credit due to, and possessed by, the plaintiffs' coal, and to injure the plaintiffs in the premises; and that the plaintiffs have never, in any manner, authorized the defendant to use or apply such name to his coal, nor, in any wise, acquiesced in his use thereof. The prayer of the bill is, that the defendant, and his agents, may be enjoined and restrained from keeping or using a sign over, or upon, or about his coal-yard, or place of business, with the words "Lackawanna coal," or "Lackawanna," painted or inscribed thereon, and from advertising "Lackawanna coal" for sale, and from selling, or offering or attempting to sell, his aforesaid coal or any coal which does not come from the plaintiffs' mines, under or by the name of "Lackawanna coal," and that he may account for or pay to the plaintiffs whatever profits he may have realized from the use of the plaintiffs' name or trade-mark, and from the sale of his coal under or by the name of "Lackawanna coal."

The answer, which was filed on the 11th of April, 1867, denies that the name of "Lackawanna coal" ever has been, or now is, either in the city of Providence and vicinity, or elsewhere, the peculiar property and trade-mark of the plaintiffs. It admits that the

defendant has been, and still is, engaged in business as a dealer in coal in Providence, and occupies a yard in which he keeps anthracite coal for sale, and does not purchase or keep for sale any of the plaintiffs' "Lackawanna coal," and deals almost exclusively in the varieties of coal mentioned in the bill by the names of Scranton coal and Pittston coal. It denies that the said varieties of coal are exclusively known by those names, and avers that they are generally known by the name of "Lackawanna coal," and are so regarded and so styled by dealers in coal and the public generally. It admits that the defendant is advertising and selling the two varieties of coal mentioned in the bill as Scranton coal and Pittston coal, by the name of, and as, and for, "Lackawanna coal;" and that he has a sign upon his yard, whereon is inscribed the name "Lackawanna coal." It avers that said sign, "Lackawanna coal," has been upon his said premises during the last seven or eight years; that, during the greater part of said period, the premises adjoining the said coal-yard of the defendant have been used and occupied by the plaintiffs, or by persons in their employment and interest, for the purpose of selling their coal; that, during said period, he has advertised and sold large quantities of the said two varieties of coal mentioned in the bill as "Pittston coal" and "Scranton coal," under and by the name of "Lackawanna coal;" that, during the whole of the above period, and for a considerable number of years previous thereto, he had not purchased any of the coal of the plaintiffs, or offered any of the same for sale, as the plaintiffs well knew; that the plaintiffs, in January, 1860, issued a circular, in which they cautioned consumers of "Lackawanna coal" against coals not coming from their company, and directed buyers to "ask for Lackawanna that comes directly from the Delaware and Hudson Canal Company;" and that the plaintiffs never made any claim or pretence that they were entitled to the exclusive use of the name "Lackawanna coal," to the knowledge of the defendant, until a short time prior to the commencement of this action. It denies that the defendant has intended or practised any falsehood, fraud, or deceit, in advertising, offering for sale, or selling, any of the above-mentioned varieties of coal, either towards the plaintiffs, or any other person. It also denies that the plaintiffs have a prior or exclusive right, as respects the use of the word "Lackawanna," as applied to coal, and that they are entitled to any protection in respect thereto, and avers that, even if such prior right to said use of said word or term had existed, as to constitute a trade-mark, such right, and all claim to protection in reference to the same, have been wholly lost to the plaintiffs by their long continued abandonment of the same, and their acquiescence in the common and general use of said word or term by the coal trade and the public,

as relating to, and being properly the designation of, all coals mined and produced in the Lackawanna valley.

I have come to the conclusion that, upon established principles of equity jurisprudence, the bill in this case must be dismissed, on the ground that, whatever right or title the plaintiffs may have had, as against the defendant, to the exclusive use of the words "Lackawanna coal," as a trade-mark, their acts, in regard to his use of those words to designate coal sold by him which was not coal mined or put in market by the plaintiffs, have amounted to a license to him to use those words to designate Scranton coal and Pittston coal, and thus to an equitable estoppel against their claim to the relief prayed for by the bill. The defendant has been in the coal business at Providence since the year 1840, engaged in buying and selling coal at wholesale and retail. The coal mined and put in market by the Pennsylvania Coal Company, being that which is called in the bill "Pittston coal," was first put into the market in 1850 or 1851. The coal mined and put in market by the Delaware, Lackawanna and Western Railroad Company, being that which is called in the bill "Scranton coal," was first put into the market in 1856 or 1857. Ever since those coals were so first put into the market, the defendant has been in the habit of selling them as "Lackawanna coal." Until August, 1866, the plaintiffs never complained to the defendant that he was using without right the words "Lackawanna coal," to designate Pittston coal and Scranton coal. From about 1857 to 1860, a Mr. Lawton was agent of the plaintiffs for the sale of their coal in New England, and conducted such agency at Providence, among other places. During that period, Mr. Lawton complained to Mr. Soutter, the vice president of the plaintiffs, that other persons were selling as Lackawanna coal, coal not put into market by the plaintiffs, and, under the instructions of Mr. Soutter, Mr. Lawton placed on the premises in Providence from which the coal of the plaintiffs was being sold by him, Lawton, a sign bearing the words "Old Company's Lackawanna Coal." Mr. Lawton testifies, that the object in erecting such sign was to designate the coal of the plaintiffs sold by him from Scranton coal then being sold by the defendant. The agency of Mr. Lawton at Providence consisted of the exclusive privilege of selling at that place the coal of the plaintiffs shipped by them to that place, for which he received from the plaintiffs a commission. During the year 1860, the plaintiffs kept a yard in Providence for the sale of their coal, for which yard they paid rent. During that year, the attention of their agent at Providence, Mr. Hopkins, was called by Mr. Soutter, who was still the vice president of the plaintiffs, to the fact that the defendant was selling at Providence, as "Lackawanna coal," Pittston coal and Scranton coal. On the 24th of January, 1860,

the plaintiffs issued a printed circular to the trade, dated at their office in New York, and signed by Mr. Soutter, as their vice president, in which this language was used: "We feel constrained to caution consumers of Lackawanna coal against coals not coming from our company, but which are largely sold in the eastern states and delivered as genuine Lackawanna to parties who inquire for, and are led to believe they are getting, our coal. To avoid this, buyers should ask for Lackawanna that comes directly from the Delaware and Hudson Canal Company." From 1861 to 1869 Mr. Hopkins continued to be the agent of the plaintiffs at Providence, under a like arrangement with that beforementioned as subsisting with Mr. Lawton from 1857 to 1860. The same sign before referred to as put up by Mr. Lawton in 1860, was transferred, in 1862 or 1863, to the building occupied by Mr. Hopkins, and from which the plaintiffs' coal has been and is sold in Providence, and has remained there ever since and still remains there. The defendant has bought no coal from the plaintiffs since about 1862. Ever since 1862 or 1863 he has had upon his premises at Providence, from which he has been selling Pittston coal and Scranton coal, signs with the words "Lackawanna coal" upon them. During the five years from 1862 to 1866, he sold under the name of "Lackawanna coal" over fifty thousand tons of Pittston coal and Scranton coal. Most of it was Scranton coal. Under the foregoing circumstances, whatever rights the plaintiffs may once have been entitled to enforce against the defendant, they have lost those rights as against him by their acquiescence in his use of the words "Lackawanna coal" to designate coal from the Lackawanna region that was not put into market by the plaintiffs.

The basis of the action of a court of equity to restrain the infringement of the right to a trade-mark, is fraud on the part of the defendant. There is no evidence in this case to show that the defendant has ever untruly represented Pittston coal or Scranton coal as having been mined or put into market by the plaintiffs, or has ever untruly sold either of such coals as having been mined or put into market by the plaintiffs. It appears that other dealers in coal in Providence have, for many years past, been selling Scranton coal as Lackawanna coal. Mr. Moses Taylor, who has been for the last fifteen years a director and manager of the Delaware, Lackawanna and Western Railroad Company, which mines and puts into the market what is called in the bill "Scranton coal," testifies, that his company has sold to the defendant thousands of tons of coal of its own production by the name of "Lackawanna coal" simply.

I do not see that the defendant, in what he has done, has been acting otherwise than honestly and fairly. He has not sold as the ·plaintiffs' coal what was not their coal; and,

even assuming the existence, to the fullest extent claimed in the bill, of the right of the plaintiffs, as against others than the defendant, to the exclusive use of the words "Lackawanna coal," as a trade-mark, the defendant, in all that he has done, has done it under such acts of acquiescence on the part of the plaintiffs as are equivalent to a license to him by them to do what he has done. To grant the prayer of the bill, namely, to enjoin the defendant from continuing to keep up the signs referred to, bearing the words "Lackawanna coal," and from advertising "Lackawanna coal" for sale, and from selling Scranton coal or Pittston coal as "Lackawanna coal," and to compel him to pay to the plaintiffs the profits he has derived from the use in his business of the words "Lackawanna coal," in the way in which he has used them, and from the sale of Pittston coal and Scranton coal under the name of "Lackawanna coal," would, therefore, be a violation of every true principle of equity.

The bill is dismissed, with costs.

[NOTE. On appeal by complainants to the supreme court of the United States, this decree was affirmed, mainly upon the ground that there can be no trade-mark in a geographical name. Upon this subject the court, speaking through Mr. Justice Strong, among other things, said: "And it is obvious that the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured, and which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names, designating districts of country. Their nature is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they may be applied. They point only at the place of production, not to the producer; and, could they be appropriated exclusively, the appropriation would result in mischievous monopolies. Could such phrases as 'Pennsylvania wheat,' 'Kentucky hemp,' 'Virginia tobacco,' or 'Sea Island cotton,' be protected as trade-marks; could any one prevent all others from using them, or from selling articles produced in the districts they describe under those appellations.—it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many. It can be permitted only when the reasons that lie at the foundation of the protection given to trade-marks are entirely overlooked. It cannot be said that there is any attempt to deceive the public when one sells as Kentucky hemp, or as Lehigh coal, that which in truth is such, or that there is any attempt to appropriate the enterprise or business reputation of another who may have previously sold his goods with the same description. It is not selling one man's goods as and for those of another. Nothing is more common than that a manufacturer sends his products to market, designating them by the name of the place where, they were made. But we think no case can be found in which other producers of similar products in the same place have been restrained from the use of the same name in describing their goods." Delaware & H. Canal Co. v. Clark. 13 Wall. (80 U. S.) 311. See. also, Alleghany Fertilizer Co. v. Woodside, Case No. 206, and note.]

DELAWARE & H. CANAL CO. (LITTLEFIELD v.). See Case No. 8,400.

DELAWARE & R. CANAL (RUNDLE v.). See Case No. 12,139.